A. J. Bell v. Commissioner.
Bell v. Commissioner
Docket No. 109214.
United States Tax Court
1943 Tax Ct. Memo LEXIS 502; 1 T.C.M. (CCH) 437; T.C.M. (RIA) 43029; January 19, 1943
*502 Joseph M. Kennedy, Esq., 1000 Jones Law Bldg., Pittsburgh, Pa., for the petitioner. J. Harrison Miller, Esq., for the respondent. LEECH Memorandum Opinion LEECH, Judge: Respondent determined a deficiency in income taxes for the calendar year 1939 against petitioner in the sum of $778.38. Petitioner sold certain stock and warrants in the taxable year. The only question is his basis for the computation of gain or loss on that sale. [The Facts] The facts were stipulated and are so found. The petitioner resides in Pittsburgh, Pennsylvania, and filed his individual income tax return for the taxable year with the collector of internal revenue at Pittsburgh, Pennsylvania. Pittsburgh Hotels Corporation (hereinafter called the "Corporation") was a Pennsylvania company which owned and operated the William Penn and Fort Pitt Hotels in Pittsburgh, Pennsylvania, and owned all the capital stock of Pittsburgh Hotels Equipment Company. On May 14, 1928, petitioner purchased six per cent serial mortgage gold bonds (second mortgage), due March 1, 1935, par value $10,000, of the Corporation, for $9,862.70. On September 23, 1930, receivers in a proceeding in involuntary bankruptcy of the Corporation *503 were appointed by the District Court for the Western District of Pennsylvania. On October 8, 1930, a foreclosure bill was filed on behalf of the trustee for the second mortgage bondholders and the receivership was extended to cover that proceeding. On May 31, 1933, upon petition of the first mortgage trustee, the receivership was extended to cover a first mortgage foreclosure proceeding. On May 13, 1935, the Corporation filed in the said court a petition for reorganization under the Federal Bankruptcy Act, and that court appointed trustees to take over the properties of the Corporation from the receiver in bankruptcy. On December 26, 1935, pursuant to court order, the American Appraisal Company appraised the property of the Corporation at $9,275,000, which appraisal was confirmed by the court on November 6, 1936 as the value of that property. In August 1936, a plan for reorganization was filed by Property Management, Inc., representing certain first mortgage bondholders. On February 25, 1937, an amended plan for reorganization was filed by a committee representing other first mortgage bondholders. Property Management, Inc., acting for the bondholders it represented and committees *504 representing the second mortgage bonds and debentures, joined in approving the amended plan, and the original plans were withdrawn. On April 12, 1937, this amended plan of reorganization was approved by the court. The stockholders of the Corporation were not given a chance to and did not participate in this reorganization. Pursuant to that plan, Pittsburgh Hotels, Inc., (hereinafter called the "Company"), was organized under the laws of Pennsylvania in April 1937, to acquire all the property and assets of the Corporation, as provided in the plan. The Company acquired the property and assets of the Corporation, under the plan, by exchanging for each $1,000 of face value of the first mortgage bonds, with all unpaid interest coupons attached, $600 face value of five per cent mortgage income bonds, $400 face value of five per cent mortgage indentures and voting trust certificates for 8 shares of common stock. A claim of $281,943.75 against the Corporation for advances to pay interest was satisfied by exchanging therefor a voting trust certificate for 4,964 shares of common stock and warrants to purchase 9,926 shares of common stock represented by voting trust certificates. For each $1,000 *505 face value serial mortgage bond (second mortgage), with unpaid interest coupons attached, were exchanged voting trust certificates for five and one-half shares of common stock and warrants to purchase 11 shares of common stock represented by voting trust certificates. For each $1,000 face value claims of general creditors against the Corporation, the Company exchanged voting trust certificates for two and one-fifth shares of common stock and warrants to purchase four and two-fifths shares of common stock represented by voting trust certificates. The funded debt and capitalization of the Corporation on September 23, 1930, were as follows: Funded Debt
First Mortgage 5 1/2% Sinking Fund
Gold Bonds
$9,915,000
6% Serial Mortgage Gold Bonds
1,650,000
Fifteen Year 6 1/2% Gold Debentures
2,400,000
Capital Stock
7% Cumulative Prior Preferred - Par $100
1,000,000
6% Cumulative Preferred - Par $100
3,250,000
Common - no par
2,000 shares
The funded debt and capitalization of the Company, as provided by the plan, were as follows: Funded Debt
First Mortgage Bonds
* $1,000,000
5% Mortgage Cumulative Income
Bonds due January 1, 1962
5,949,000
5% Convertible Income Debentures
due January 1, 1967
3,966,000
Capital Stock
Common - no par value (represented
by Voting Trust Certificates)
** 300,000 shares
*506 Warrants to purchase Voting Trust Certificates for 41,360 shares of Common Stock, exercisable on or before January 1, 1945, at the Price of $10.00 per share The balance sheet of the Corporation at December 31, 1930, shortly after the time of the appointment of the receivers in bankruptcy was as follows: Assets
Building and Equipment
$14,870,694
Land
4,805,800
Cash
149,251
Notes and Accounts Receivable
120,288
Inventories
41,180
Prepaid Expenses
59,805
Def. Expenses
1,404,162
Total
$21,451,180
Liabilities
Prior Preference Stock
$1,000,000
Preference Stock
3,250,000
Common Stock
100,000
Funded Debt
14,257,500
Accounts Payable
141,741
Accruals
938,096
Security Deposits
12,650
Contingent Liabilities
109,257
Corporate Surplus
1,721,162
Deficit
522,843
Total
$21,451,180
The balance sheet of the trustees of the Corporation at January 31, 1937 shortly before the time of confirmation of the amended plan for reorganization, was as follows: Assets
Land
$ 4,805,800
Buildings
13,210,478
Cash
107,273
Notes and Accounts Receivable
151,831
Inventories
84,959
Other Assets
600
Investments - Pittsburgh Hotels
Equipment Company, 1,000 no
par shs
1,933,359
Deferred Charges
61,703
Total
$20,356,003
Liabilities
1st Mtge. 5% Bonds
$9,915,000
Serial 6% Bonds
1,650,000
Deb. 6 1/2 s
2,400,000
Int. on 1st Mortgage Advanced
281,944
Int. on Advanced 1st Mtge. Bonds
1,033
Reserve for Accountant's Fees
1,200
Liabilities Incurred
1,481,134
Notes Payable
100,000
Accounts Payable
80,629
Accrued Expenses
66,330
Trustees Equity
3,799,081
Trustees Net Profit
579,651
Total
$20,356,003
*507 The balance sheet of the Company at December 31, 1937, stated in thousands, is as follows: Assets
Land
$ 2,495,000
Buildings
7,194,000
Furniture, etc
1,014,000
China, etc
225,000
Cash
155,000
Inventories
71,000
Cash, restricted
120,000
Prepaid expense
25,000
Total
$11,450,000
Liabilities
Capital Stock
$ 100,000
1st Mtge. Loan
1,000,000
Income Bonds
5,949,000
Conv. Inc. Debentures
3,966,000
Accounts Payable
194,000
Accruals
93,000
1st Mtge. Interest
4,000
Income Bond Interest
297,000
Deposits
5,000
Real Estate Texas
92,000
Deficit
250,000
Total
$11,450,000
In accordance with the reorganization, the holders of securities in the Corporation received securities in the Company as follows: 5% Mtge.
Holders of
Warrants
Cum. Bonds
First Mortgage Bonds
$5,949,000
6% Serial Mortgage Bonds
18,199
Unsecured Creditor Claims (inc.
6 1/2% S.F. Debentures)
13,235
Secured Creditor Claims
9,926
Total
41,360
$5,949,000
Issued
41,360
5,949,000
Voting Tr.
5% Conv.
Cts. for
Holders of
Debs.
Com. Stock
First Mortgage Bonds
$3,966,000
79,320 shs.
6% Serial Mortgage Bonds
9,099 shs.
Unsecured Creditor Claims (inc. 61/2% S. F. Debentures)
6.617 shs.
Secured Creditor Claims
4,964 shs.
Total
$3,966,000
100,000
Issued
3,966,000
100,000
*508 On July 6, 1937, petitioner, in accordance with the plan, received 55 shares of common stock in the Company and warrants to purchase 110 shares of common stock in the Company in exchange for his second mortgage bonds. On July 6, 1937, and at all times material hereto, the 55 shares of common stock in the Company, received by petitioner, had a fair market value of $1 per share, and the warrants to purchase 110 shares of common stock of the Company, received by petitioner, had no fair market value. On December 30, 1939, petitioner sold his 55 shares of common stock in the Company and warrants to purchase 110 shares of the common stock in the Company for $5.50, upon which sale the brokerage fees and expenses amounted to $9.70. In his income tax return for 1939 petitioner deducted a loss as resulting from this sale, measured by the difference between his cost of the stock in the Corporation and the proceeds of the sale. Respondent disallowed this deduction. He determined that the transaction in 1937, in connection with which petitioner received stock and warrants in the Company in exchange for his bonds in the Corporation, was not within the definition of reorganization contained in *509 section 112 (g) (1) of the Revenue Act of 1936 as retroactively amended by section 213 (g) (1) and (g) (2) of the Revenue Act of 1939. It followed, then, that petitioner sustained a recognized loss in 1937 when the exchange occurred, measured by the difference between petitioner's cost of his bonds in the Corporation and $55, the fair market value of the stock and warrants in the Company, when received. Revenue Act of 1936, section 111 (a) and (c), and section 112 (a) of the Revenue Act of 1936. The conclusion then necessarily was that petitioner's basis for the stock and warrants, sold in 1939, was his cost of the bonds of the Corporation, reduced by the amount of the recognized loss. Revenue Act of 1938, section 807 (a), amending section 113 (a) (7) of the Revenue Act of 1936. [Opinion] The question is thus clear-cut. It is whether the transaction in 1937, in which the Company acquired the assets and properties of the Corporation, was within the definition of reorganization contained in section 112(g)(1), as amended, and therefore was one in which no gain or loss was recognized to petitioner under section 112(a). If the answer is affirmative, petitioner will prevail; if negative, *510 respondent must be affirmed. Petitioner points to ; cert. denied, , as controlling. Respondent rests his position squarely upon . We think respondent is right. The Kitselman case involved the definition of reorganization contained in section 112(i) of the Revenue Act of 1928, which differs pertinently from that contained in the Revenue Act of 1936, section 112(g)[*] as amended, controlling here. In the present case, no statutory merger or consolidation was effected. The assets and properties of the Corporation were not acquired by the Company solely for the voting stock of the Company. There was no acquisition by the Company in exchange solely for all or a part of its voting stock of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the Corporation. The stock of the Corporation never came into the picture at all. Its holders were not given a chance to and did not participate in the reorganization. *511 Immediately after the transfer neither the Corporation nor its stockholders were in control of the Company. Revenue Act of 1936, section 112(h). There was no mere recapitalization nor change in identity, form or place of reorganization of the Corporation. The Company was a wholly new and separate corporation. The proprietary interests therein were entirely different from those in the Corporation. Thus, on the authority of Decision will be entered for the respondent. Footnotes
*. To be issued to raise new capital as required. ↩
**. 158,640 shares are reserved for conversion of the 5% Convertible Income Debentures, and 41,360 shares are reserved for subscription warrants.↩